GRIFFIN, J.
Paul D. Owens, Cynthia R. Owens and Paul D. Owens d/b/a Gem Supply Company [collectively “the Owens”] appeal a final order denying their motion to tax fees for their business damage expert in a condemnation case. The lower court denied the claim on the ground that it had been abandoned. Because we find no abandonment under the facts of this case, we reverse.
The condemnation proceeding was brought by Orange County [“the County”] in 1995 as part of a project to widen Old Winter Garden Road. Included in the County’s declaration of taking was a thirty-foot strip, which ran through portions of a building which the Owens owned and in which they conducted three separate businesses: a warehouse rental business, a janitorial service business (“AAA Building Services”) and a janitorial supply business (“Gem Supply”). The condemned property also included property which the Owens used for business parking and/or as a driveway. The Owens claimed in their answer that they would incur business damages as part of the taking.[1]
The case was settled prior to trial, at the parties’ second court-ordered mediation. The mediated settlement stated that the Owens were to be paid $90,000:
in full settlement of all claims for compensation from Petitioner whatsoever, including statutory interest, but excluding attorney’s fees, expert’s fees, costs, and expenses.
The settlement also required the County to make various improvements to the Owens’ property.[2] These provisions were later incorporated into a stipulated final judgment. The judgment “reserved jurisdiction to award reasonable expert fees and costs, including appraisal fees and other expert witness fees and attorneys’ costs.... ” The judgment did not specifi *468 cally refer to business damages, nor did it provide for a waiver of the Owens’ business damage claim.
The Owens then filed a motion to tax fees and costs. All fee and cost issues were resolved except those pertaining to the Owens’ business damage expert, Laura J. Tindall. Tindall, a certified public accountant, who had submitted bills totaling $38,434 to the Owens.
Tindall’s fees were addressed in a series of memoranda prepared by the parties. In a memorandum filed on October 13, 1998, the County argued that the Owens were not entitled to recover Tindall’s fees because they had abandoned their claim for business damages during mediation. The County contended that her fees were not “compensable” within the meaning of section 73.091(1), Florida Statutes (1995), which provided for the recovery of reasonable accountant’s fees only when business damages were compensable.
The County asserted that the Owens’ abandonment of their claim for business damages had been shown by the fact that prior to mediation, the Owens had made a claim for $281,900 for the value of the land being taken and for $989,000 in business damages. The County asserted that the Owens had begun negotiations at $281,900 at the second mediation conference, and had actually settled for $90,000, which the County concluded showed that they had abandoned their claim for business damages. The Owens objected that all negotiations in mediation were privileged and filed a motion to strike and expunge the paragraphs of the County’s written responses that allegedly detailed such communications and negotiations. The Owens also denied ever making any statements that they were willing to abandon their business damages claim. The Owens also argued that any settlement discussions even if made outside of mediation were part of an offer to compromise or settle their claims, which made the statement privileged pursuant to section 90.408, Florida Statutes (1995).
At the hearing on the Owens’ motion to be awarded fees for the work done by Tindall, Tindall testified that, in her opinion, one of the three businesses, Gem Supply Company, would have a business damage claim of nearly $989,000, which was the fair market value of the company. Gem Supply used the premises at Parcel 1167 for the display and storage of janitorial supplies, as well as for a classroom for seminars at which customers are taught how to use various chemicals, supplies and equipment. The company, which has eight full-time salesmen who work on a commission only basis, includes among its customers major theme parks and had gross sales in 1995 of approximately $3,000,000. Most of the property condemned by the County consisted of a driveway along the north side of the building, but the taking also involved a small corner of the building itself which was used by Gem Supply. Tindall’s report claimed that the effect of the taking was to: (1) eliminate some or all of the parking on the north side of the building; (2) eliminate the ability of vehicles to safely enter and exit the property; and (3) reduce the product display and teaching area of Gem Supply. Tindall theorized that the entire business would be lost without mitigation of the effect of the taking, because: (1) Gem Supply needed a safe means of ingress and egress for customers for its business to continue; and (2) Gem Supply was in need of all of the space that it was using as of the condemnation. The report stated that these damages could be “mitigated” by:
cutting 30 feet of [sic] the building to provide for necessary site distances and maneuverability onto Washington Street. Rick Swisher, Architect, has advised us that by first building the new display area, the downtime will only be two days. We are of the opinion that any lost profit would be de minimus [sic].
The report concluded that:
In our opinion the business damages to Gem Supply Company due to the *469 acquisition of property on November 27, 1995 by Orange County are the compensatory value of $989,000. We believe these damages can be eliminated with the proposed mitigation.
(Emphasis in original).
As an additional witness in support of their claim for business damages, the Owens called Gary R. Gerson, a certified public accountant who had been engaged by the County to evaluate the Owens’ business damage claim. Gerson’s somewhat garbled opinion on this issue was:
A. We determined that there should be no significant business damages, but to give the owner any benefit of the doubt, we said that the business damages should not exceed $20,000 if in case he did do some of the cure that he was supposed to do for some downtime.
Q. So, if, in fact, no cure were implemented, then a business damage would exceed the $20,000?
A. I don’t know that to be the case.
He also testified that he had previously served as a business damage expert in cases in which business damages had been reduced due to a “cure,” and agreed that he had required a business damage expert fee in those cases.
The County argued at the hearing that it should not be required to pay Tindall’s expenses for calculating the Owens’ business damages, since “it has been the County’s position ever since we agreed to a second mediation conference in this case ... that the business damage claim was waived.” The County in particular noted that the Owens had sought a total of $1,270,900 in damages, based on the appraisal and the business damages report, but had settled the case for only $90,000, which was seven percent of the total damages originally claimed. Alternatively, the County argued that the Owens’ business damages were not compensable precisely because they could be mitigated.
The Owens argued that no evidence had been presented that they had abandoned their business damage claim and noted that they had settled for several times the County’s original offer. They argued that it was of no moment that they had compromised the claim; to find that these fees could not be recovered because the claim had been compromised would eliminate all incentive to settle, since it would also eliminate the right to expert fees.
The lower court entered a written order denying the Owens’ request for fees for their business damage expert, the written order explaining that fees were being denied because:
the Defendants Paul D. Owens, Cynthia R. Owens, and Paul D. Owens, d/b/a/ Gem Supply Company abandoned their claim for business damages, and, therefore the case of County of Sarasota v. Burdette, 524 So.2d 1064 (Fla. 2d DCA 1988), is applicable.
The right to recover fees for a business damage expert is controlled by section 73.091, Florida Statutes (1995), which states:
The petitioner shall pay attorney’s fees as provided in s. 73.092 as well as all reasonable costs incurred in the defense of the proceedings in the circuit court, including, but not limited to, reasonable appraisal fees and, when business damages are compensable, a reasonable accountant’s fee, to be assessed by that court.
Id. (emphasis added). The business damage provision was added in 1987. Sarasota County v. Burdette, 524 So.2d 1064 (Fla. 2d DCA 1988), on which the lower court relied, was decided under the former version of the statute.
In Burdette, Sarasota County challenged an award of costs for an accountant whom the landowners had employed to determine business damages. The court found no basis for awarding the landowners reimbursement for their accountant’s fees under a statute which stated only that the *470 county was required to pay all reasonable costs of the proceedings in the circuit court, including a reasonable attorney’s fee to be assessed by that court.” § 73.091, Fla. Stat. (1985). The court held that the fees charged by the Burdette’s business damages expert could not be considered “reasonable costs” of the proceedings and were not compensable on any other basis, in part because the claim had been abandoned during trial. The court stated:
On the second day of the trial, the Youngs abandoned their claim for business damages. We have carefully analyzed the question of whether the Youngs are entitled to reimbursement for Payne’s fee and we are unable to find an acceptable basis for its allowance. Moreover, notwithstanding the statutory purpose to insure that con-demnees do not experience uncompensated detriment, we have not been directed to nor has our independent research disclosed any authority, either analogously or directly pertinent, upon which to sustain the award of Payne’s fee. Accordingly, the trial court erred in assessing the County with -Payne’s fees.
Id. at 1067. Plainly, Burdette, does not deal with concessions made in the course of settlement.
Reduced to its essence by the time of oral argument, the County’s position is that when the Owens agreed to the settlement of the claim that included a cure by Orange County of the potential “business damage” instead of a dollar figure allocated to business damages, the claim was abandoned and thus lost its compensability. We reject this reasoning. First, it is clear that some amount of business damages were compensable if the County had not agreed to the roadway modification. Second, although it is possible to abandon a claim as part of a settlement, abandonment is not inherent in the acceptance of an alternative to money damages. The settlement agreement contains no indication that the business damage claim was being abandoned; in fact, it suggests that the claim was compromised. Gem Supply, the entity which had made the business damage claim, was included in the settlement and the County agreed to make improvements to the Owens’ property to mitigate the business damages.
Accordingly, we reverse the appealed order and remand to the lower court to determine the amount of expert fees to which the Owens are entitled for the business damage claim.
REVERSED and REMANDED.
ANTOON, C.J, and THOMPSON, J, concur.

. See § 73.071(3)(b), Fla. Stat. (1993).

. The addendum to the agreement required the County to: (1) adjust the slope of the driveway on Washington Street in accordance with the Owens' wishes; and (2) construct the driveway at a width of between 30 and 38 feet at the curb.